OPINION OF THE COURT WATSON, J. The Slovenic National Benefit Society is incorporated in Illinois and has branches throughout the United States, Canada, and Mexico'. Nikolich, a member, holding a benefit certificate, by occupation a coal miner, suffered an injury, consisting of a fractured pelvis resulting in a progressive atrophy of the left leg. He was paid sick benefits for something over three months. He sued the society, claiming the balance of one year’s sick benefits, a so-called compromissary payment of $300 from the sick benefit fund, $375 as commutation of his $1,500 death benefit (see By-Laws, art. XXII, § 21, infra), and $500, the sum prescribed by By-Laws, art. XXVI, for loss of a leg. He recovered upon all claims except the last mentioned. The society has appealed. The trial court found (finding 11) : “That by reason of said injuries the plaintiff is now, at all times since receiving said injuries has been, and will be hereafter, permanently, totally, and continuously disabled from performing any kind of work or labor for his support and maintenance.” The evidence sufficiently shows that appellee’s injury is permanent and incurable. It does not show, however, that he is disabled from performing any kind of work or labor for his support or maintenance. On the contrary, it clearly appears that while he cannot, and never- can again carry on his occupation as a coal miner, he is well able to engage in occupations not requiring the ttse of his leg, and that his condition permits him to go from place to place, and up and down stairs. He is not therefore incapacitated for work which he could perform while sitting. Appellee contends that the proof and finding showing that he is incapacitated for the. performance of his usual occupation as a coal miner is sufficient to -support the judgment. He cites many cases to the effect that, under a contract for indemnity on account of total and permanent disability, proof of total and permanent incapacity to perform the claimant’s former and usual work entitles him to a recovery. Appellant does not question the authority of these cases, but contends that they are not here applicable. The contract consists of a benefit certificate, providing for the payment of $1,500 in case of death and for such other benefits as the by-laws prescribe. Not having suffered death, appellee’s rights are dependent entirely upon the correct construction of the by-laws of the society. They are extensive and elaborate. The English version is not easy to read or comprehend, being a translation of the original in either the Slavic or the Croatian language. Article XXII covers the subject of “Sick benefits.” It contains 22 sections. To an understanding of appellee’s rights, it seems necessary to reproduce sections 1, 8, 15, 18 (f), 19, and 21. "Section 1. Members who on account of sickness or injury are declared by a certificate of the physician to be unable to attend their usual work, and who have strictly complied with the by-laws of this society and with instructions of the physician, and if the subordinate branch, upon recommendation of the local sick committee, approves and files with the main office the sick benefit order in proper time, shall be entitled to a sick benefit in the sum as provided for by the by-laws.” “Sc-c. 8. Should the visiting officer suspect any member on the sick list' of being able to do some kind of work in spite of the physician’s statement to the contrary, he shall notify the president of his committee and said committee shall, without delay, cause a medical examination of such a suspected member by another physician, who shall give a written statement regarding the results of such an examination; such examinations shall be made regardless to the length of the period of the member’s sickness. If found that the suspected member can perform some kind of work, he shall have no right to claim any further benefits from the date of said examination and the cost thereof shall be deducted from his benefits to which the member is entitled to the date of the special examination; if, on the contrary, the examining physician finds the member still unable to work, then the society shall pay the expenses of such an examination upon receipt of the physician’s statement together with his bill by the secretary of the sick benefit department forwarded from the branch secretary. The same procedure shall be carried out when a notice of suspicion, as to the condition of a member’s sickness, is given by a member other than an officer of the local sick committee.’1 “Sec. IS. No member shall be entitled to receive sick benefits for a period longer than the period of his inability to perform .anv kind of work on account of one sickness and its effects. If the attending physician shall report that' a member will not be able to perform the duties of his previous occupation, but that he may do some light work, his sick benefits shall cease with the date of such a report.” “Sec. 18. The Slovenic National Benefit Society shall pay no sick benefits to members : “(f) Who, during their illness, are able to perform some kind of work.” “Sec. 19. In case of any external disease, or injury resulting from accident, the local sick committee shall determine the real cause of such disability of member. The secretary of the sick benefit department shall have the power to ask for any proof or information from the subordinate branch and physician before payment of the sick benefits is made. The branch shall consider the conditions of a member’s occupation, and upon facts in connection therewith shall base its judgment as to whether the sick benefits in such a case shall be approved or not. Should a member, while sick and claiming the sick benefits, leave the boundaries of the branch without the permission of his physician and knowledge of the branch without a reasonable excuse, the branch shall demand such a member to return to its boundaries in order to,be under its proper control, and if the member refuses to comply with such a request, he shall have no further claim for sick benefits.” “Sec. 21. In case a member, after, having drawn sick benefit for one year, is considered incurable by the physician, he may' expect the society to pay him in a lump sum his compromissary claim from the sick benefit fund. For every dollar of sick benefit, $100 compromissary claim shall be paid. Every such member may continue to be a member of the society, but must disclaim all sick benefit. Until then the member shall pay the full assessment. A member who demands full payment of his compromissary claim and thereby discontinues to be a member of the society shall also receive one third of his. death benefit insurance providing he has been a member of the society for at least S years. If he has been a member of the society for less than 5 years, he shall receive only one-fourth of his death benefit insurance. Before making any such payment, the member shall present to the supreme executive committee certificates from two physicians, selected either by the subordinate branch or supreme executive committee, certifying therein that he is absolutely incurable or permanently disabled. The examination of such member shall be conducted in the presence of either the local sick committee, a member of the supreme sick committee or his duly empowered representative, and the society shall bear the expenses of such examination.” It appears from section 21 that the conditions entitling a member to the compromissary payment from the sick benefit fund, and to the prescribed proportion (in this case one-fourth) of the death benefit, are that the member shall have drawn (or at least have been entitled to draw) sick benefits for one year, and that his sickness or disability be shown to be absolutely incurable or permanent. The finding brings appellee within these conditions, and the evidence supports the finding. But appellant points to section 15, and might also have pointed to sections 8 and 18 (f), as necessarily qualifying the lang-uage of section 21. It is urged that these sections make it plain that sick benefits cannot be paid after it appears that the member is able to perform any kind of work; that the fact that he is not incapacitated for any kind of work which he can do sitting excludes rights to sick benefits; and that, the right to sick benefits being excluded, the right to compromissary payment from the sick benefit fund and the right to the commutation of the death claim are left without support. Appellant’s contention is plausible and, if the sections mentioned stood alone, might be sustained. But section 1 expressly gives members a right to sick benefits if, “on account of sickness or injury, * * * unable to attend their usual work.” Moreover, section 19 provides: “The branch shall consider the conditions of a member’s occupation, and upon facts in connection therewith shall base its judgment as to whether the sick benefits in such case shall be approved or not.” These sections seem to base the right to sick benefit upon the inability of the member to carry on his usual occupation. They are rendered nugatory by the interpretation which appellant urges. If considered that sections 1 and 19 are of an effect exactly the contrary of sections 8, 15, and 18 (f), we think appellant’s contention must be overruled. It is universally held that a contract of insurance is to be liberally construed in favor of the insured. Under that rule if a right is in positive terms given to the insured in one section, another section as positively taking the right away should be disregarded. To hold otherwise would open the door to fraud and imposition. It would enable the insurer to rely upon the favorable clauses to recruit members and get their money, and to rely upon the unfavorable clause to resist payment of their claims. But it is not to be assumed that there was any intention on the part of the society to insert contradictory provisions in its by-laws. Any other construction is to be preferred to that. We note that sections 8, 15, and 18 (f) refer to sick benefits only in a general way. Section 1 provides for sick benefits on account of sickness or injury. Section 19 applies “in case of any external disease, or injury resulting from accident.” Both of these sections contemplate the origin of sick benefits and the conditions determining the commencement of payments. Sections 8 and 15 clearly refer to the duration of payments, once commenced; and section 18 (f), while not so clearly limited, may well have been intended to contemplate duration rather than commencement. Mere diseases, such as typhoid or pneumonia, always result for the time in total incapacity to perform labor of any kind, and, in the ordinary course of recovery, result, next, in ability to perform light labor, and, finally, in ability to resume the usual occupation. In such case it would not be entirely unreasonable to contract that the right to receive sick benefits should terminate at that stage of the recovery when the member was able to take up light work. The condition of the appellee, however, is caused by an injury resulting from accident. In such case there is no ordinary or usual course of recovery. Each case must be considered by itself. In such a case we think that the right to sick benefits, having originated, is not cut off by recovery to the extent that the member can perform labor, but continues so long as he is unable to resume his usual occupation ; and when that condition has continued for one year and is shown to be permanent and incurable,, the right arises, under section 21, to the compromise of the sick benefit and the commutation of the death benefit. This construction, we confess, is not entirely satisfactory, but we are forced to it as the only one giving effect to the several provisions of these by-laws. Appellant contends that the proofs submitted in support of appellee’s claim were not sufficient, under section 21, supra. There was a certificate dated August 19, 1922, by two physicians; the blank form being entitled “Medical certificate,” in which the extent and permanence of the disability was thus set forth: “Approximate loss of working capacity. This man was allowed compensation from the employing company under the workmen’s compensation for the loss of the use of a left leg.” There was another certificate dated November 15, 1922, by one physician, containing substantially the same statement. Upon the latter of these certificates, at least, appear certain indorsements by the officers of the branch of which we have not been furnished with translations. Appellant contends that these proofs are insufficient, in failing to show incurability, in that the latter was by one pl^sician instead of two, and that the whole claim was prematurely brought, since the year during which appellee might have been entitled to sick benefits did not end until November 20, 1922.' These points the trial court ruled against appellant cpl: the ground that they had been waived. The action of the society upon these proofs appears only by two letters, reading as follows: “Chicago, Ill., Nov. 20—22. "Sir: Received your letter, which it says, that Brother Alex Nikolich want to get the Sick Benefit paid up to Nov. 20—1922. Letting you know'that he’s daily Sick Benefit was stopped Feb. 27—1922: Because that was the date that he was the last time examined by the Doctor. That was the certificate that was given to the Local Lodge the 23 of April — 1922 in this Certificate the Doctor says, that he would be able to work about the 28 of Mar. 1922. he was then the last time seen by the Doctor Feb. 27—1922. And that is as long as that he could receive the Sick Benefit under our By-laws after that, we did not receive no certificate for Sick Benefit in Head Office. If he claims a longer Sick Benefit why not fill out another certificate. But, if he was 'not, under the Doctors care he could not get Sick Benefit longer than to Feb. 27 — 1922 as the last certificate shows. Did the Brother Nikolich after the meeting in the April 23 1922 ask for any longer Sick Benefit? The Sick Benefit Certificate must be filled out exactly under By-laws, and signed by the doctors by who they were examined. The 13 of May I wrote to the Local Lodge that if he was under the Doctor’s care after Feb. 21-to fill out another certificate for Sick Benefit, which would, show. And he didn’t do so, it is not our fault, that he didn’t get the Sick Benefit longer. The reason he didn’t fill out another certificate as we thought, that because he was not under the Doctor’s care any more, and Society could not pay except the Certificate is filled out by the Doctor and made exactly by the Laws. “Yours truly, Bias Novak. Chicago, Ill. November 27, 1922. "Sir: Let you know, that Brother Alex. Nikolich under the By-laws couldn’t get paid for this disability of loosing one leg. The doctor which examined Brother Nikolich on Mar. 28 — 1922 he reports on the back side of the certificate that he is able to work, and that his advise brother Nikolich to walk without his cane. The Society pays for disability only for loosing the leg. B'ut not only for weaken. With regards, Matthew J. Turk, Supreme Secretary, S. N. P. J.” It is greatly to be doubted whether the proofs had been received by the society when the letter of November 20th was written. They are not mentioned in the letter. The writer is commenting, 'not upon any proofs submitted, but upon a letter said to have been received to the effect that appellee wanted “to get the sick benefit up to date of November 20, 1922." It is fairly inferable, however, that the proofs had been received when the letter of November 27th was written. The ruling therein contained is to the effect that the society is not liable for a weakening of the leg, but “pays for disability only for losing the leg.” It is necessary to mention in this connection that article XXVI of the by-laws provides certain lump sum benefits; to be paid as compensation for specific disabilities among which are the loss of arms, legs, and other members. It was upon this provision that appellee’s $500 claim was based. The certificate of November 15 is upon a form entitled, “Claim for partial or total disability benefit — medical certificated’ From these facts we draw the conclusion that the society understood that appellee was making claim for the loss of a leg under article XXVI, and its ruling was based upon that supposition: We are inclined to agree with appellant, therefore, to the extent of holding that it did not, understandingly, waive the defects now relied upon by failing to call attention to them. The trial court found that appellee was an ignorant man: that because of the intricate and complicated nature of the by-laws he sought the aid of the officers of the branch in obtaining the action of the society upon his claim, and that the officers offered and pretended to aid him; that the forms used by him were those furnished by such officers, and that he proceeded according to their instructions ; and that he endeavored, in good faith, to meet the requirements of the by-laws. A careful consideration of the by-laws leads us to the conclusion that the branch is so organized and controlled as to represent and serve the local interests of the society, and that practically all of the business of the society with its members is conducted through the branch. It is the general rule that in such cases the local organization is to be considered the agent of the general organization. 1 Cooley’s Briefs on Insurance, p. 69; 29 Cyc. 42. The procedure followed by appellee and the proofs adduced were satisfactory to- the branch and conformed to the direction and instruction of its responsible, officers. It fully understood the nature of the claim. If the society did not understand it, it was because its local agent failed to make it plain. It may be true, as appellant contends, that the branch was without authority to waive the positive requirements of the by-laws as to proofs. But it is also true that, the branch having waived the requirements, the society might do so if it chose. Had it understood the nature of the claim, its action upon it would constitute waiver of the defects here relied upon. Its misunderstanding of the claim is not the fault of appellee, but was occasioned by the incompetence or negligence of its own agent. Hence we do not think the trial court erred in holding appellant to a waiver. It appearing in this proceeding that appellee had a meritorious claim, it may properly be assumed that if his procedure had been according to the by-laws, his claim would have been approved. Failure to approve it and the institution of this suit result from a misunderstanding. Appellant, supposing appellee’s claim to be under article XXVI of the by-laws, denied it on grounds not necessary here to consider. Appellee, supposing that the nature of his claim had been properly communicated to the society, might well consider its denial of the claim as a waiver of the defects in question. Since appellee was justified in regarding it as a waiver, it is a waiver for the purposes of this case. ’ Appellant further contends that the judgment cannot be supported upon the theory of waiver, for the reason that the complaint is not based upon that} theory, but expressly pleads compliance with the provisions of the by-laws. It appears that after appellant by its answer had pleaded, as separate defenses, the several defects in the proof, appellee by reply pleaded waiver. Such pleadings might have been attacked at the proper time, but appellant did not do so. The case was tried as though waiver had been properly pleaded. The facts were litigated. The evidence when received, was not objected to as not being within the pleadings. The point was first raised eight months after the conclusion of the hearing, after the court had announced his decision and was about to settle the findings and the decree. Appellant cites Murray v. Silver City, Deming & Pacific R. R. Co., 3 N. M. 580, 9 P. 369. In that case evidence was received, without objection, upon an element of negligence which had not been 'pleaded. The territorial Supreme Court held that the trial court erred in overruling a motion to strike such evidence; the motion having been made after both sides had rested, but before argument. If that case is in point, it is not supported by later decisions. The present doctrine is that a motion to strike evidence which has been admitted without objection is addressed to discretion. State v. McKnight, 21 N. M. 14, 153 P. 76; State v. Blacklock, 23 N. M. 251, 167 P. 714; Crawford v. Gurley, 23 N. M. 662, 170 P. 736; State v. Lazarovich, 27 N. M. 282, 200 P. 422; Candelaria v. Gutierrez, 30 N. M. 195, 230 P. 436. A case may be made out by incompetent evidence, if received without objection. State v. Blacklock, supra. Another principle appears applicable here. The issue of waiver having been litigated without objection, the complaint should be here considered as amended to conform to the proofs adduced. Code 1915, § 4176; Canavan v. Canavan, 17 N. M. 503, 131 P. 493. Ann. Cas. 1915B, 1064; Gray v. Titsworth, 27 N. M. 39, 192 P. 520. Had section 4176 been in force at the time, Murray v. Silver City, Deming & Pacific R. R. Co., supra, would perhaps have been differently decided. Appellant contends that the court should not have entertained the suit because appellee failed to exhaust his remedies within the society before commencing suit. Our attention is called to the society’s somewhat elaborate jurisprudence. As transcribed in the record, its provisions occupy 15 pages. We have some doubt at the outset whether this so-called arbitration system should be interpreted as applicable to the case of a member's rejected claim for benefits. But as the decision of the trial court and the arguments here are on different grounds, we shall consider the questions presented. According to appellant’s contention, appellee should first have procured a trial of his grievance in the branch. From the decision there, either party might have appealed, within 30 days, to the supreme arbitration committee. From an adverse decision there, appellee could appeal either to the convention or to referendum. The convention consists of . the supreme officials, the committee1 on by-laws, and the delegates elected by the branches. It. meets once in four years, and its next meeting was to be in 1925. The referendum is a submission of a question to all members of the society for decision by ballot. It requires publication of the question in the official organ, the furnishing of ballots upon which the question shall be printed, and completion of the vote within 56 days. As to this system, the court found: “That the sections ol defendant’s by-laws providing for referendums. make no mention of appeals from the decision of the supreme arbitration committee, and no appropriate machinery -is provided by said by-laws whereby the decision of such an appeal could be submitted to a referendum vote of all the members of the society in a way or at an expense that would not amount to a denial of justice; and the requirement of said by-laws that a member in order to appeal to the convention should await the holding of a quadrennial convention of said society is so harsh, unreasonable, and delajred as to deny justice.” We agree with the trial court that the appeal to the convention, meeting once in four years, is not a reasonable remedy, and need not be employed before resorting to the courts. See cases cited in Rueb v. Rehder, 24 N. M. 534, 174 P. 992, where the question was stated but not decided. See also, 29 Cyc. 207; 19 R. C. L. 1231, and authorities cited. But, it is urged, a member had the alternative right of appeal by referendum. So the reasonableness of such remedy is in question. No precedent has been cited, and, so far as we are aware, there is no decision in point. The trial court seems to have doubted whether the referendum appeal was intended to determine the liability of the society to a member for sick benefits, and to have concluded that, if so intended, it was unreasonable. We share the trial court's doubt. Indeed, as above indicated, we doubt whether any of this system of arbitration should be held applicable to a member whose grievance is that the society has refused benefits to which he deems himself entitled. It is the reasonableness of the remedy, however. that is argued, and we shall decide that question. The controversy in such a case as this involves questions of fact and of law. The tribunal, whether of original or appellate jurisdiction, must be in possession of the facts in order to apply the law. The members of the branch, sitting as a court, can hear the evidence. It can be preserved and considered by the supreme arbitration committee. The claimant can appear and be represented before his Branch and before the appellate committee. But how can those facts be fairly represented to thousands of members, organized in hundreds of branches scattered throughout the United States, Canada, and Mexico? The evidence before us occupies nearly 200 pages of the record. It would be impracticable to reproduce the substance of it in the official organ, or upon a referendum ballot. If it were practicable, it is not required. It would be impossible for a claimant to make any presentation of the merits of his case. There is no way of reaching the membership by argument except through the columns of the official organ. It does not appear that the claimant has any right to space for that purpose. The question to be decided is judicial. It involves property'rights based on contract. In deference to the agreement of the parties, made in advance of the controversy, the courts might yield or postpone their jurisdiction to lodge proceedings of a judicial nature. The referendum, however, is essentially nonjudicial. However well adapted to a decision of legislative questions, laying-down general rules for future relations and conduct, it seems completely unadapted to the decision of a specific case. So, as applied to such a case as this, we hold it unreasonable. The .judgment will be affirmed, and the cause remanded to the district court, where judgment will be entered against appellant and its supersedeas surety. PARKER, C. J, and BICKLEY, J., concur.